# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| DESPERADO MOTOR RACING & | § | |
| MOTORCYCLES, INC., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-1574 |
| | § | |
| EDWARD ROBINSON, | § | |
| INDIVIDUALLY AND D/B/A | § | |
| DESPERADO'S NORTHSIDE | § | |
| CHOPPERS, AND AS FORMAL | § | |
| ENTITY IF FORMED, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This case comes before the Court on Defendant Edward Robinson's, doing business as Desperado's Northside Choppers ("Defendant" or "Robinson"), Motion to Dismiss for Lack of Personal Jurisdiction [Doc. # 34] ("Motion").[1]  Plaintiff Desperado Motor Racing and Motorcycles, Inc. ("Plaintiff" or "Desperado Motor Racing") filed a Memorandum in Response to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction [Doc. # 49].  Upon review of the parties' submissions, all pertinent matters of record, and applicable legal authorities, the Court concludes that Defendant's Motion should be **denied.**

---

[1]      Robinson also filed a Memorandum in Support of the Motion to Dismiss for Lack of Personal Jurisdiction [Doc. # 35] ("Memorandum").

## I.   <u>FACTUAL BACKGROUND</u>

Plaintiff Desperado Motor Racing is a manufacturer of custom-designed motorcycles with its primary place of business in Montgomery County, Texas. Plaintiff asserts it has continually used the name "Desperado" for commercial purposes since 1995, and that Desperado Motor Racing sells its motorcycles throughout the United States under the trade name "Desperado."[2] Plaintiff alleges that Defendant Edward Robinson, doing business as Desperado's Northside Choppers, with full knowledge of Desperado Motor Racing's rights in the trade name Desperado, copied the mark "Desperado" and is using it in the promotion and sale of Defendant's motorcycles. As a result, on May 22, 2009, Plaintiff filed the instant suit against Defendant alleging violations of the Lanham Act, 15 U.S.C. § 1125(a), and various state law causes of action including common law trademark infringement. Plaintiff's Complaint seeks damages and a preliminary and permanent injunction.

Defendant had not filed an answer or otherwise appeared in the case by August 25, 2009, the date of the initial pretrial conference in this case. Nor did Defendant appear at the conference. At the conference, Plaintiff produced an answer which Defendant Robinson, proceeding *pro se*, mailed directly to Plaintiff's counsel.

---

[2]      *See* Plaintiff's Original Complaint and Application for a Preliminary and Permanent Injunction [Doc. # 1], ¶¶ 9-10.

Robinson's *pro se* answer has never been filed with the Court.[3]  The Court instructed Plaintiff to file a motion for default, and stated that Defendant was required to file a response within fifteen days of service.  The Court set a conference on Plaintiff's request for a preliminary injunction on September 30, 2009, and stated that Defendant's failure to file an answer or response by that date would result in the Court granting the default judgment and the requested preliminary injunction.[4]

Plaintiff filed a Request for Entry of Default [Doc. # 14] on September 2, 2009.  Defendant failed to file an answer or other response, and, on September 22, 2009, the Clerk entered a default against Defendant [Doc. # 17].  The Court held an evidentiary hearing as scheduled on September 30, 2009, at which the Defendant did not appear, and entered a Final Judgment and Permanent Injunction in Plaintiff's favor on October 9, 2009 [Doc. # 26].

Twelve days later, Defendant, through counsel, filed four motions seeking, *inter alia*, to set aside the default judgment and permanent injunction and to have the case dismissed for lack of personal jurisdiction.[5]   After several continuances to

---

[3]     After eventually appearing through counsel in the case, Robinson claims that he mailed this *pro se* answer to the Court several weeks after mailing it to Plaintiff's counsel.  Robinson's *pro se* answer has never been filed or received by the Court.

[4]     Hearing Minutes and Order [Doc. # 13].

[5]     Defendants filed an Emergency Motion to Stay Execution of Final Judgment and Enforcement of Permanent Injunction [Doc. # 28], Motion to Set Aside Entry of
(continued...)

accommodate the schedules of counsel, the Court held a hearing on Defendant's

motions on January 12, 2010, and set aside the entry of default judgment and

permanent injunction.[6]  The Court also heard oral argument on Defendant's pending

Motion to Dismiss for Lack of Personal Jurisdiction at the hearing, and ordered the

parties to provide final briefing, if any, by January 19, 2010.  Plaintiff filed a

Supplemental Memorandum [Doc. # 57]. Defendant opted against filing any

additional briefing.

## II.    STANDARD FOR PERSONAL JURISDICTION

Plaintiff bears the burden of establishing contacts with the forum state by the

nonresident defendant sufficient to invoke the jurisdiction of this Court.  *See Mink v.*

*AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999).  When a court rules on a motion

to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the

party asserting jurisdiction is required to present facts sufficient to constitute a *prima*

*facie* case of personal jurisdiction to satisfy its burden.  *Central Freight Lines Inc. v.*

---

[5]      (...continued)
Default Judgment for Relief From Final Judgment and Permanent Injunction, and
Alternatively Motion for New Trial [Doc. # 31], Motion to Dismiss for Lack of
Personal Jurisdiction [Doc. # 34], and Motion for Leave to File Answer to Plaintiffs's
Original Complaint and Application for Preliminary and Permanent Injunction [Doc.
# 37].  The Court granted each of Defendant's motions, except the Motion to Dismiss
for Lack of Personal Jurisdiction, at the January 12, 2010 hearing.  *See* Hearing
Minutes and Order [Doc. # 55].

[6]      *See* Hearing Minutes and Order [Doc. # 55].

*APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003); *Alpine View Co. v. Atlas Copco A.B.*, 205 F.3d 208, 214 (5th Cir. 2000); *see Brown v. Slenker*, 220 F.3d 411, 417 (5th Cir. 2000).   A *prima facie* showing of personal jurisdiction may be established by the pleadings, depositions, affidavits or exhibits of record.  *See Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999).  The Court must accept as true the party's uncontroverted allegations and resolve any factual conflicts in favor of the party seeking to invoke the court's jurisdiction.  *Central Freight Line Inc.*, 322 F.3d at 376; *Alpine View Co.*, 205 F.3d at 214; *Stripling v. Jordan Production Co.*, 234 F.3d 863 (5th Cir. 2000).  The law, however, does not require the court to credit conclusory allegations, even if uncontroverted.  *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868-69 (5th Cir. 2001).

Under the Federal Rules of Civil Procedure, a federal court sitting in diversity may exercise jurisdiction over a nonresident defendant only if permitted under state law.  *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000) (citing FED. R. CIV. P. 4(e)(1), 4(h)(1), 4(k)(1)).  The reach of a state court's jurisdiction is limited by: (1) the state's long-arm statute; and (2) the Due Process Clause of the Fourteenth Amendment to the federal Constitution.  *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citing *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir. 1989)).  The Texas long-arm statute authorizes the exercise of

jurisdiction over non residents "doing business" in Texas.  *Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 204 (5th Cir. 1996) (citing  TEX. CIV. PRAC. & REM. CODE  § 17.042). The Texas Supreme Court has interpreted the "doing business" requirement broadly, allowing the long-arm statute to reach as far as the federal Constitution permits. *Id.* (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990)).  Thus, the two-step inquiry collapses into one federal due process analysis.  *Johnston*, 523 F.3d at 609.

The two-part test for assertion of personal jurisdiction under the due process clause is (1) whether a defendant "purposefully availed itself of the benefits and protections of the forum state by establishing 'minimum contacts' within the forum state," and (2) whether the assertion of personal jurisdiction would comport with "traditional notions of fair play and substantial justice." *Alpine View*, 205 F.3d at 215; *see also Burger King Corp. v. Rudzewica*, 471 U.S. 462, 476-77 (1985).  Both prongs of the due process test must be met in order for this Court to exercise personal jurisdiction over the defendant.

The "minimum contacts" requirements may be satisfied if either (1) the controversy is "related to" or "arises out of" the nonresident defendant's contacts with the forum ("specific jurisdiction"), or (2) the defendant has "continuous and systematic" contacts with the forum ("general jurisdiction").  *See Burger King*, 471

U.S. at 472-76; *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 413-17 (1984); *Alpine View*, 205 F.3d at 215.

To conclude that a defendant should "reasonably anticipate" being haled into the forum state requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws" or "purposefully directs" its efforts toward the forum state. *Panda Brandywine*, 253 F.3d at 869 (quoting *Burger King*, 471 U.S. at 475-76). It is well established in the Fifth Circuit that when a nonresident's contact with the forum state "stems from a product, sold or manufactured by a foreign defendant, which has caused harm in the forum state, the court has [specific] jurisdiction if it finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state." *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 205, 216 (5th Cir. 2000) (quoting *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987)); *see also Oswalt v. Scripto, Inc.*, 616 F.2d 191, 197-98 (5th Cir. 1980) (holding a lighter manufacturer subject to personal jurisdiction in Texas in case for damages caused by defective lighter even though it used a distributor to import the lighters and conducted no business in the United States other than contacting with Scripto.)

"Specific jurisdiction applies when a nonresident defendant 'has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *See Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (quoting *Panda Brandywine*, 253 F.3d at 867).   The mere fact that a plaintiff suffered some harm in Texas, however, is insufficient to establish specific jurisdiction in this forum.  *See Panda Brandywine*, 253 F.3d at 870; *Revell v. Lidov*, 317 F.3d 467, 473 and n.41 (5th Cir. 2002) (explaining that the "effects" test of *Calder v. Jones*, 465 U.S. 783 (1984), is but one facet of the ordinary minimum contacts analysis and is not inconsistent with requiring more than plaintiff's mere residence in the forum and suffering harm there).   When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment.  *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999).   "The defendant [in such   circumstance] is purposefully availing himself of 'the privilege of causing a consequence' in Texas." *Id.* (citing *Serras v. First Tennessee Bank National Ass'n.*, 875 F.2d 1212 (6th Cir. 1989).

## III.   ANALYSIS

The first step of the Due Process inquiry is to determine whether a defendant "purposefully availed itself of the benefits and protections of the forum state by

establishing 'minimum contacts' within the forum state." *See Alpine View*, 205 F.3d at 215.  Defendant argues that he is a resident of Illinois and lacks minimum contacts with Texas.  He states that, for the past eight years, he has operated a motorcycle business in Illinois known as "Northside Choppers," and that he does not engage in business in Texas.[7]  Defendant also states that he has not committed any torts in Texas and does not maintain a place of business, have employees or agents, or own property in this state.[8]

Plaintiff counters with an affidavit ("Smith Affidavit") of the owner of a Texas business, David Smith, a customer of Plaintiff's, who states that Defendant made repeated attempts to sell him a motorcycle in Texas.  Smith states that he is the owner of a business located in Magnolia, Texas that displays "monster trucks" across the nation.[9]  Smith states that in February 2009, while performing at a monster truck event in Illinois, he was approached by Defendant Robinson, who claimed to represent "Desperado Northside Choppers."[10]  Smith states that he was standing next to two of

---

[7]    *See* Declaration of Edward Robinson, Exh. 1 to Memorandum [Doc. # 35] ("Robinson Declaration"), ¶¶ 3-4.

[8]    *Id.,* ¶¶ 6-8.

[9]    Declaration of David Smith, Exh. C. to Plaintiff's Memorandum in Response to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction ("Response") [Doc. # 49] ("Smith Declaration"), ¶ 1.

[10]   *Id.,* ¶ 2.

his trucks, both of which displayed Plaintiff's mark "Desperado Motor Racing & Motorcycles, Inc." and corresponding logo.[11]  Upon noticing the "Desperado" name and logo, Robinson began to solicit Smith's business, asking if he could build Smith a motorcycle.[12]  Smith, who already owned two motorcycles manufactured   by Plaintiff Desperado Motor Racing, states that Robinson claimed to represent the same "Desperado."[13]  Robinson and Smith discussed Robinson building a motorcycle depicting the theme of one of Smith's monster trucks, and Smith states that Robinson "assured me that he could build a motorcycle that I would be 'amazed' with."[14] Robinson added that "he could deliver [the motorcycle] to me at my business in Magnolia, Texas[,] and that he could take care of the . . . registration and documentation in Texas."[15]  Smith states that based on his long relationship with Plaintiff Desperado Motor Racing, and his appreciation for their craftsmanship, he agreed to consider purchasing a motorcycle from Robinson.[16]

---

[11]     *Id.*

[12]     *Id.*

[13]     *Id.*

[14]     *Id.*, ¶ 3.

[15]     *Id.*

[16]     *Id.*

Smith, in his affidavit, adds that when he arrived back in Texas, he found an invoice for $50,000 that Robinson had already emailed him.[17]   The invoice stated that this sum was for fifty percent of the cost to build the motorcycle Robinson was offering.[18]   Smith then visited Plaintiff's office to ask Jeff Nicklus, the owner of Plaintiff Desperado Motor Racing, why he had never told him that he had a dealership in Illinois.[19]   Nicklus told Smith that he had no such dealership.[20]

Smith estimates that he received ten phone calls from Robinson before Smith returned to Texas from Illinois.[21]   Smith avers that Robinson's phone calls to Smith, as well as his emails to Smith, increased after Smith reached Texas.[22]   Smith states that

---

[17]   *Id.,* ¶ 4

[18]   *Id.*

[19]   *Id.*

[20]   *Id.*, ¶ 5.  Nicklus then looked up Robinson's phone number on the internet and placed a call to him while Smith sat in the same room.  *Id.*  During the ensuing phone conversation, Robinson informed Nicklus that he knew who he was, and Nicklus told Robinson that he could not use the Desperado name, and could not represent that he was a part of Desperado Motor Racing.  *Id.*  Robinson responded that he would do what he wanted and that there was nothing Nicklus could do about it.  *Id.*  Nicklus, in turn, responded that he would file a lawsuit to stop Robinson.  *Id.*  Smith, who remained quiet during the phone call, which took place on speaker phone, states that Robinson then responded: "Whatever! I will do whatever I want and no judge or law suit can stop me," and hung up the phone.  *Id.*

[21]   *Id.*, ¶ 6.

[22]   *Id.,* ¶ 6.  It is not clear from the Smith Affidavit whether the calls Smith describes as receiving prior to returning from Texas were placed to his office there, or elsewhere. It is clear that the calls, and emails, he received after returning to Texas were placed

(continued...)

at some unspecified time after Robinson received the call from Nicklus complaining of Robinson's conduct, Robinson changed his plans as to delivery of the motorcycle.[23] Robinson thereafter offered to deliver the motorcycle to Las Vegas for the World Finals "because I don't want to get in any more trouble in Texas than I am already in."[24]  Smith states he continued to receive phone calls from Robinson for "weeks" until he finally stopped answering them.[25]

The Court holds that Defendant purposefully availed himself of the benefits and protections of Texas law by establishing minimum contacts here through his calls, emails, and conversations attempting to sell a motorcycle to a Texas resident while the resident was in Texas.  *See Alpine View*, 205 F.3d at 215.  Smith's uncontradicted allegations, which the Court takes as true for purposes of the Motion, *Central Freight Line Inc.*, 322 F.3d at 376, establish that Defendant Robinson specifically targeted a Texas customer of Plaintiff's  and allegedly falsely represented that he (Robinson) was affiliated with Plaintiff's business.  Though the attempted sale, and thus the misrepresentations, began in Illinois, they continued repeatedly in Texas.  Defendant

---

[22]     (...continued)
         into Texas.

[23]     *Id.,* ¶ 7.

[24]     *Id.*

[25]     *Id.*  Defendant has made no attempt to dispute the Smith's version of events, though, as noted, the Court expressly allowed for supplemental briefing on this Motion.

sent Smith an invoice in Texas.  Defendant repeatedly emailed and phoned Smith in Texas about the transaction.  This uncontradicted evidence establishes that Defendant purposefully directed his efforts at the forum state of Texas.  *See Panda Brandywine*, 253 F.3d at 869 (quoting *Burger King*, 471 U.S. at 475-76).   This trademark infringement lawsuit arises out of those contacts, which, viewing the evidence in a light most favorable to the Plaintiff, included Defendant's alleged misrepresentations that he was involved in Plaintiff's motorcycle business.  *See id.* at 867.

Consummation of the sale is unnecessary to establish purposeful availment in this case.  *See Oreck Corp. v. U.S. Floor Systems, Inc.,* 803 F.2d 166, 169 (5th Cir. 1986) (advertising and promotional activities for allegedly infringing product were sufficient to establish personal jurisdiction over out-of-state manufacturer defendant despite the fact that the product itself was never shipped to the forum state); *Dave Guardala Mouthpieces, Inc. v. Sugal Mouthpieces, Inc.*, 779 F.Supp. 335, 337 (S.D.N.Y. 1991) ("passing off" of allegedly infringing product in forum state is sufficient to establish personal jurisdiction there, even if no sale is made).

Moreover, Plaintiff has provided evidence, when construed in the light most favorable to Plaintiff, that Defendant's communications into Texas contained misrepresentations, namely, the attempted false association with Plaintiff's business. When the actual content of communications with a forum gives rise to intentional tort

causes of action, this alone constitutes purposeful availment.  *Wien Air Alaska,* 195 F.3d at 213.

In sum, Robinson, who made  repeated attempts to sell the motorcycle to Smith while Smith was in Texas, reasonably should have anticipates being haled into court here.  *See World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297(1980). Indeed, Robinson's awareness of his connections to Texas is further evidenced by his statement that he did not want to get into any more trouble in Texas *than he was already in*.  Defendant thus purposefully availed himself of the Texas marketplace, and established minimum contacts here for this lawsuit that arises out of those contacts.

The Court now proceeds to the final step in the due process inquiry, *i.e.*, whether the exercise of this Court's jurisdiction would offend "traditional notions of fair play and substantial justice." *Alpine View*, 205 F.3d at 215; *see also Burger King Corp. v. Rudzewica*, 471 U.S. 462, 476-77 (1985).  Once a plaintiff establishes purposeful minimum contacts between the defendant and the forum state, the burden shifts to the defendant to show that the exercise of the court's jurisdiction would be unfair and unreasonable.  *Wien Air Alaska*, 195 F.3d at 215.  The defendant must make "a compelling case." *Burger King*, 471 U.S. at 477.  In making a fundamental fairness determination, a court must examine: (1) the defendant's burden; (2) the

forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the states' shared interest in furthering fundamental social policies. *See Wein Air Alaska,* 195 F.3d at 215.

Defendant Robinson has not met his burden to make a compelling case that the exercise of this Court's jurisdiction would offend traditional notions of fair play and substantial justice. As noted, Robinson is alleged to have repeatedly sought the benefits of the Texas marketplace by sending communications, some of which contained misrepresentations, into the state in his effort to sell a motorcycle. While, no doubt, it would be more convenient for Defendant to litigate this suit in Illinois, the opposite is true for Plaintiff, a resident of Texas. Defendant has offered no reason as to why litigating this suit in Texas is especially burdensome to him, a person allegedly willing to ship a pricey motorcycle in this the state. Texas clearly has an interest in this case because it involves a Texas business, Plaintiff's longstanding operations. Based on the uncontradicted averments by Smith, Plaintiff has established that the actions giving rise to its claims in this suit took place, at least in part, in Texas, and that at least one key witness (Smith) resides here. In sum, Defendant has failed to meet his burden to show that the exercise of this Court's jurisdiction would be

fundamentally unfair.  "[O]nce minimum contacts are established, the interests of the

forum and the plaintiff justify even large burdens on the defendant."[26]  *Id.*

## IV.    CONCLUSION

For the forgoing reasons, Defendant's Motion to Dismiss for Lack of Personal

Jurisdiction [Doc. # 35], is hereby **DENIED.**

SIGNED at Houston, Texas, on <u>February 18th</u>, 2010.

Nancy F. Atlas
United States District Judge

---

[26]    Plaintiff also argues that Defendant has waived the right to raise personal jurisdiction as a ground for dismissal of this suit.  Robinson, Plaintiff correctly argues, did not raise an objection to this Court's jurisdiction over him in his *pro se* answer mailed to Plaintiff's counsel.  *See* Defendant's Answer to Original Complaint, Exh. 1 to Motion for Leave to File Answer to Plaintiff's Original Complaint.  Although this answer was never filed, Robinson relied on it in an effort to have the default judgment set aside. *See*, *e.g*, Memorandum of Law Supporting Robinson's Emergency Motion to Stay Execution of Final Judgment and Enforcement of Permanent Injunction [Doc. # 29] at 5.  Having reached the merits of Robinson's Motion, the Court need not decide Plaintiff's waiver contention.