## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| DESPERADO MOTOR RACING & | § | |
| MOTORCYCLES, INC., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-1574 |
| | § | |
| EDWARD ROBINSON, | § | |
| INDIVIDUALLY AND D/B/A | § | |
| DESPERADO'S NORTHSIDE | § | |
| CHOPPERS, AND AS FORMAL | § | |
| ENTITY IF FORMED, | § | |
| Defendants. | § | |

### MEMORANDUM AND ORDER

Pending before the Court is Plaintiff's Motion for Contempt and Damages [Doc. # 87], to which Defendant has responded [Doc. # 91] and Plaintiff has replied [Doc. # 92]. Having reviewed the parties' submissions, applicable legal authorities, and all matters of record, the Court concludes that it lacks subject matter jurisdiction over this proceeding. Accordingly, Plaintiff's Motion for Contempt is **denied**.

## I.      FACTUAL BACKGROUND

Plaintiff Desperado Motor Racing is a manufacturer of custom-designed motorcycles. On May 22, 2009, Plaintiff filed the instant lawsuit alleging that Defendant Edward Robinson, doing business as Desperado's Northside Choppers,

with full knowledge of Desperado Motor Racing's rights in the trade name Desperado, copied the mark "Desperado" and used it in the promotion and sale of Defendant's motorcycles.   Subsequently, Defendant filed a Counterclaim and Third-Party Complaint [Doc. # 61], asserting defamation, defamation per se, and business disparagement against Plaintiff Desperado Motor Racing and Third-Party Jeff Nicklus.  All Defendant's claims were dismissed without prejudice by Order dated July 13, 2010 [Doc. # 78].

The parties informed the Court that they had reached a settlement and, on August 20, 2010, the Court entered a Conditional Dismissal Order [Doc. # 79] that stated that the Court "dismisses this case without prejudice to reinstatement of Plaintiff's claims, if any party represents to the Court on or before September 19, 2010, that the settlement could not be completely documented."  On September 14, 2010, Plaintiff filed a Motion to Reinstate, Enforce Settlement Agreement, and to Enter Final Judgment [Doc. # 80].  By Order dated September 15, 2010 [Doc. # 81], the Court extended the deadline in the Court's August 20, 2010 Conditional Dismissal Order [Doc. # 79] to October 13, 2010.  The Conditional Dismissal Order also stated that "[i]f the settlement ha[d] not be finalized by that date," counsel and a representative for each party were to appear on October 27, 2010, for a hearing on Plaintiff's Motion to Enforce.  At the parties' request, the Court continued the hearing

date to November 2, 2010, at which time a lengthy hearing was held.  *See* Doc. # 84.

At the hearing, the parties and Court discussed a detailed proposed settlement

agreement, "Enforced Settlement Agreement and Mutual Release," which concluded

with "AGREED, ORDERED AND ADJUDGED" and a signature line for the Court.

*See* Doc. # 84.  The Court and parties eventually reached agreement on the language

of the settlement and agreed that the Court would sign it as well under the

"ORDERED" language.  The Court granted the parties time to make the agreed

corrections to the document, which became the final agreement (the "Agreement").

The Court signed the final version of the Agreement on November 11, 2010 [Doc.

# 86].[1]  The time period in the Conditional Order of Dismissal for the parties to reopen

the case thus was extended to but expired on November 11, 2010.

On April 19, 2011, Plaintiff filed the instant Motion for Contempt [Doc. # 87],

alleging that Defendant was not in compliance with the Enforced Settlement

Agreement.  The Court held a brief telephone conference and ordered the parties'

counsel to meet by telephone with Defendant Robinson to obtain his full compliance

with the terms of the settlement.  The Court further ordered Defendant to complete

compliance by May 25, 2011, and to send a status report to the Court regarding

---

[1]      Plaintiff did not submit and the Court did not sign a formal final judgment.

Plaintiff's Motion for Contempt by May 31, 2011.  Plaintiff's Motion for Contempt

has been fully briefed and is now ripe for decision.

## II.   <u>ANALYSIS OF JURISDICTIONAL ISSUES</u>

"It is to be presumed that a cause lies outside [a federal court's] limited

jurisdiction, and the burden of establishing the contrary rests upon the party asserting

jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 378

(1994).  "Enforcement of [a] settlement agreement . . . is more than just a continuation

or renewal of the dismissed suit, and hence requires its own basis for jurisdiction."

*Id.*; *accord SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458, 462 (5th Cir. 2010).  "[A]

court's 'ancillary jurisdiction' 'to manage its proceedings, vindicate its authority, and

effectuate its decrees' provides such an independent jurisdictional basis to enforce a

settlement agreement only if 'the parties' obligation to comply with the terms of the

settlement agreement ha[s] been made part of the order of dismissal.'"  *Hospitality*

*House, Inc. v. Gilbert*, 298 F.3d 424, 430 (5th Cir. 2002) (quoting *Kokkonen*, 511 U.S.

at 380-81).  In the context of voluntary dismissals under Federal Rules of Civil

Procedure 41(a)(1)(A)(ii), the Fifth Circuit explained that "[t]he [Supreme] Court

specified two ways in which a court may make a settlement agreement part of its

dismissal order: 'either by separate provision (such as a provision 'retaining

jurisdiction' over the settlement agreement) or by incorporating the terms of the

settlement agreement in the order.'" *Id.* (quoting *Kokkonen*, 511 U.S. at 380-81); *see SmallBizPros, Inc.*, 618 F.3d at 461-62.  "In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist."  *Kokkonen*, 511 U.S. at 380; *accord SmallBizPros, Inc.*, 618 F.3d at 462.  However, "jurisdiction is a strict master and inexact compliance is no compliance."  *SmallBizPros, Inc.*, 618 F.3d at 464.

In *Hospitality House, Inc. v. Gilbert*, 298 F.3d 424 (5th Cir. 2002), the parties had submitted a joint motion to dismiss that included as an attachment a copy of the parties' settlement agreement, but the order of dismissal did not have the settlement agreement attached.  The Fifth Circuit held that the district court did not make the settlement agreement part of its order because the order both failed to include a separate provision expressly retaining jurisdiction and failed to incorporate or embody the terms of the settlement agreement directly into the order.  *SmallBizPros*, 618 F.3d at 462 (citing *Hospitality House*, 298 F.3d at 430).  The Fifth Circuit recently, when explaining its reasoning in *Hospitality House*, stated:  "Even assuming arguendo that the settlement agreement was attached directly to the order, we found that [a]t most, physical attachment of a settlement agreement to a dismissal order evinces the district judge's awareness and approval of the terms of the settlement agreement, which do not suffice to make them part of his order."  *SmallBizPros*, 618 F.3d at 462 (quoting

*Hospitality House*, 298 F.3d at 431, and *Kokkonen*, 511 U.S. at 381 (internal quotation marks omitted)).  The Court of Appeals went on to hold that the district court lacked the ancillary jurisdiction necessary to enforce the settlement terms.  *Hospitality House*, 298 F.3d at 434; *SmallBizPros, Inc.*, 618 F.3d at 462.  Relying on *Kokkonen* and *Hospitality House*, the *SmallBizPros* court reasoned, "it is . . . clear that a district court may incorporate or embody the terms of a settlement agreement in a dismissal order or expressly retain jurisdiction over a settlement agreement by clearly indicating such intent in a dismissal order."  618 F.3d at 462-63 (citing *Kokkonen*, 511 U.S. at 381-82, and *Hospitality House*, 298 F.3d at 431).  In either case, all parties must agree to such jurisdiction.  *Kokkonen*, 511 U.S. at 381-82.

The situation at bar is a dismissal analogous to a Rule 41(a)(1)(A)(ii) dismissal and is similar to *Kokkonen*, *Hospitality House* and *SmallBizPros*.  The Court dismissed this case conditionally.  The Court retained jurisdiction under its Conditional Dismissal Order until the parties finalized their settlement on November 11, 2011, but that Court Order did not contain any separate provision retaining jurisdiction over enforcement of the Agreement.  *See* Doc. # 79.  Thus, the order of dismissal in this case does not create continuing jurisdiction for the Court to enforce the Agreement terms.

At the parties' request, on November 11, 2010, the Court, signed the parties' Agreement [Doc. # 86] with "ORDERED, ADJUDGED" language. Importantly, however, the Agreement contains no dismissal language and no express reservation of jurisdiction over enforcement of its terms after Plaintiff's voluntary dismissal of the suit.

The Agreement, rather than expressing a clear intention for the parties to return to this Court if there is a violation of the settlement terms, provides for an intricate procedure for enforcement of its terms. The Agreement states that there must first be mediation.[2]  If mediation fails, the Agreement states, "a *suit* may be *filed* to enforce the terms of this settlement agreement."[3]  The Agreement provides for liquidated damages for the party that files suit, if the action succeeds, and a different liquidated damages amount for the non-filing party if the filing party loses.[4]  These enumerated procedures, which comprise two pages of the Agreement, do not expressly state that the parties must return to *this* Court after the order dismissing the case has become final. The Agreement adds that "[t]he suit will be a Show Cause proceeding to enforce the terms of this settlement agreement," and that "[t]he final Order will

---

[2]  Agreement [Doc. # 86], ¶ 23.B.

[3]  *Id.*, ¶ 23.C (emphasis added).

[4]  *Id.*, ¶ 23.D.

include that the *pending court* shall retain continuing jurisdiction over the parties and issues to enforce this settlement."[5]  The parties never submitted, and the Court never signed, a party-prepared "final Order," let alone one containing language that this Court retained jurisdiction over enforcement of the Agreement.[6]  And, as noted, the Agreement does not contain any language dismissing the suit.  Therefore, the Court's signature and "ORDER" at the end of the document amounted to an approval of the Agreement, not a dismissal order incorporating the terms of the agreement or an express statement by the Court that it retained jurisdiction over enforcement matters, as required by the pertinent legal authority.  This Court accordingly lacks subject matter jurisdiction to hear Plaintiff's Motion for Contempt.

The Court recognizes that the parties agreed that the "Agreement shall be governed by, construed, interpreted and enforced in accordance with and subject to the laws of the United States and State of Texas,"[7] that "[i]n the event of a dispute, the Parties agree to the jurisdiction and venue in the federal courts of Houston, Harris County, Texas,"[8] and "that the US District Court for the Southern District of Texas

---

[5]   *Id.*  The latter sentence implicitly relates  to Section 13 of the Agreement, which required "Desperado" (presumably, Plaintiff) to prepare and file a "form of Order."

[6]   The term "pending court" is vague in context.

[7]   *Id.*, ¶ 22.

[8]   *Id.*

has continuing jurisdiction over the parties."[9]  Parties cannot by agreement confer federal subject matter jurisdiction on a federal district court, which is a court of Congressionally limited jurisdiction.  *See Rasul v. Bush*, 542 U.S. 466, 489 (2004); *United States v. Hazelwood*, 526 F.3d 862, 864 (5th Cir. 2008) (citing *Save the Bay, Inc. v. U.S. Army*, 639 F.2d 1100, 1102 (5th Cir.1981), and *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001)).  "The burden of establishing federal jurisdiction rests on the party seeking the federal forum."  *Howery v. Allstate Insurance Co.*, 243 F.3d 912, 919 (5th Cir. 2001) (citing, in the context of a removed action, *Kokkonen*, 511 U.S. at 377); *id.* ("An expansive interpretation of the federal question statute to allow federal courts to assert jurisdiction over cases with tangential and inessential federal components would step upon the authority of state courts to decide state law and ignore the capacity of state courts to decide questions of federal law. It would allow a federal tail to wag the state dog.").

The cited provisions in the Agreement do not meet Plaintiff's burden to demonstrate subject matter jurisdiction was retained by this Court.  At most, these provisions reveal an agreement by the parties that in a suit to enforce the Agreement, Defendant agreed that the United States District Court for the Southern District of

---

[9]      *Id.*, ¶ 23.E.  This clause has an inexplicable location; it is the second half of a paragraph addressing second infractions of the Agreement terms.

Texas has personal jurisdiction over him, that the parties agree venue in the Southern District of Texas is proper, and that Texas and Federal law will apply to any enforcement proceeding.

This conclusion is consistent with general doctrine on federal court jurisdiction. There is only one possible ground for federal subject matter jurisdiction over this enforcement dispute:   complete diversity of citizenship between plaintiff and defendant under 28 U.S.C. § 1332.   Plaintiff has the burden to show the Court has jurisdiction. *See Howery*, 243 F.3d at 916; 28 U.S.C. § 1332.   A crucial requirement for diversity jurisdiction is the amount in controversy must exceed $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a); *Whalen v. Carter*, 954 F.2d 1087, 1094 (5th Cir. 1992).   It is clear that the pending dispute —   ostensibly for "contempt" of this Court's order, but in reality a claim for violation of the terms of the Agreement — involves less than the jurisdictional amount of this Court.   The parties in the case at bar agreed that liquidated damages of $5,000, plus attorney's fees, would be awarded if the party claiming a violation of the Agreement prevailed in that claim. There is no reasonable likelihood that the amount in controversy in this enforcement dispute will exceed $75,000.   The Court accordingly lacks subject matter jurisdiction, which gives it the necessary authority, to handle this matter.

## III.    <u>CONCLUSION</u>

The parties may have intended for this Court to retain ancillary jurisdiction to enforce the terms of their Settlement Agreement, but "jurisdiction is a strict master and inexact compliance is no compliance." *SmallBizPros, Inc.*, 618 F.3d at 464.  The case was dismissed by operation of the Conditional Dismissal Order when it expired on November 11, 2010.  The Conditional Dismissal Order did not expressly provide for ancillary enforcement jurisdiction.  The parties' Agreement contains no express dismissal language and no clear reservation of jurisdiction over enforcement of the agreed terms.  Accordingly, this Court is without subject matter jurisdiction and the requisite authority to enforce the terms of the Agreement.  It is therefore

**ORDERED** that this proceeding is **dismissed without prejudice** for lack of subject matter jurisdiction.

SIGNED at Houston, Texas, this **22<u>nd</u>** day of **July, 2011.**